**Louise M. HARRIS, M.D., Plaintiff,**

v.

**PROVIDENT LIFE & ACCIDENT INSURANCE COMPANY, and Provident Companies, Inc., Defendants.**

**No. 99–CV–1093.**

United States District Court,
N.D. New York.

Sept. 19, 2001.

Whiteman, Osterman & Hanna, Jean F. Gerbini, of counsel, Albany, NY, for plaintiff.

Bond, Schoeneck & King, LLP, Arthur J. Siegel, of counsel, Albany, NY, for defendants.

### MEMORANDUM–DECISION AND ORDER

HURD, District Judge.

### I. INTRODUCTION

 Plaintiff Louise M. Harris, M.D. ("Dr. Harris" or "plaintiff") commenced this diversity action on July 15, 1999, asserting causes of action for breach of the terms of her disability insurance policy and breach of covenant of good faith and fair dealing.[1] The defendants Provident Life

---

1. As a preliminary matter, under New York law, every contract implies a covenant of good faith and fair dealing, and a "breach of that duty is merely a breach of the underlying contract." *Fasolino Foods Co. v. Banca Nazionale del Lavoro*, 961 F.2d 1052, 1056 (2d Cir.1992)(quoting *Geler v. Nat'l Westminster Bank USA*, 770 F.Supp. 210, 215 (S.D.N.Y. 1991)); *see also Bekhor v. Josephthal Group, Inc.*, No. 96 CIV. 4156, 2000 WL 1521198, at *5 (S.D.N.Y. Oct.13, 2000)(quoting *Centre-Point Merchant Bank Ltd. v. Am. Express Bank Ltd.*, 913 F.Supp. 202, 209 (S.D.N.Y.1996)). Consequently, plaintiff's second cause of action for breach of covenant of good faith and fair dealing must be dismissed as duplicative

& Accident Insurance Company, and Provident Companies, Inc. ("Provident" or "defendants") moved for summary judgment, pursuant to Fed.R.Civ.P. 56. Plaintiff opposed and moved for partial summary judgment.[2] Defendants opposed and filed a cross-motion for summary judgment. Oral argument was heard on August 24, 2001 in Albany, New York. Decision was reserved.

## II. *FACTS*

Dr. Harris is a board certified anesthesiologist who was employed at Glens Falls Hospital in Glens Falls, New York. On March 16, 1998, she developed asthma while at the hospital, which was doing latex abatement in the maternity ward where she was working that day. She attempted to return to work on several occasions, but her symptoms worsened and she stopped working in May of 1998.

Dr. Harris had purchased a disability insurance policy from Provident in July 1992, which provided for a monthly benefit payment of $10,560.00 in the event of her total disability from her occupation as an anesthesiologist.

On May 11, 1998, Dr. Harris submitted a Notice of Claim to Provident seeking disability benefits due to "Latex Allergy." (Harris Aff. dated May 23, 2001 Ex. C.) Her claim was accompanied by a statement from her treating physician, Dr. Michael Slaughter ("Dr. Slaughter"), containing a diagnosis of, inter alia, "Latex induced asthma". *Id.*

On August 31, 1998 and September 24, 1998, Dr. Harris was seen by Dr. James DeMasi ("Dr. DeMasi"), an allergist retained by Provident to perform an Independent Medical Examination. Dr. DeMasi concluded that she was not allergic to latex and could return to work.

Dr. Harris requested additional testing for latex allergy, which Provident rejected. Plaintiff personally arranged for testing at Johns Hopkins Medical Center ("Johns Hopkins") and the Mayo Clinic. On October 15, 1998, she was tested at Johns Hopkins and orally advised that the tests were negative for latex allergy. On October 24, 1998, Provident sent Dr. Harris a letter disclaiming coverage based upon Dr. DeMasi's reported negative findings of latex allergy. On October 27, 1998, she was tested at the Mayo Clinic. Again, she was advised that the tests were negative for latex allergy. Plaintiff did not inform Provident of these oral representations. Written reports of the negative findings for Johns Hopkins and the Mayo Clinic did not become available to the plaintiff's treating physicians until January and June 1999. Dr. Harris took affirmative steps to prevent these written reports from becoming known to Provident. An additional evaluation at the Mayo Clinic on June 19, 1999 again resulted in a negative finding for latex allergy.

In September 1998, prior to disclaiming coverage, Provident did send a check to the plaintiff for $10,560.00 "constituting payment for benefits accrued during the period May 4, 1998 to September 3, 1998, less a 90 day 'elimination period.'" (Compl. ¶ 36.) Therefore, plaintiff seeks monthly benefits from September 1998.

## III. *PROCEDURAL HISTORY*

On December 20, 2000, Provident's motion to compel production of the Johns Hopkins and Mayo Clinic reports was granted. *See Harris v. Provident Life & Accident Ins. Co.*, 198 F.R.D. 26 (N.D.N.Y. 2000). Provident, with court permission, amended its answer to assert the affirmative defenses of fraud and rescission based upon Dr. Harris's alleged active conceal-

---

of her first cause of action for breach of contract.

**2.** Plaintiff seeks summary judgment only with respect to her breach of contract claim.

ment of the negative latex allergy reports from Johns Hopkins and the Mayo Clinic.

Provident now moves for summary judgment, arguing that the plaintiff's failure to disclose material information (the Johns Hopkins and Mayo Clinic reports) bars her from recovering on her breach of contract claim, and that her misrepresentations concerning her inability to work due to a latex allergy entitles it to rescind the insurance contract.

On or about the very same day Provident served its motion, plaintiff served her motion for partial summary judgment, alleging that, as a matter of law, she is totally disabled from her occupation due to asthma, and that, whatever the cause, she cannot perform the substantial and material duties of her occupation as an anesthesiologist. Therefore, the defendants breached the insurance contract by denying her benefits. She also argues that Provident's counterclaims for recission and fraud are patently meritless and its motion for summary judgment with respect to those claims warrants sanctions.

Provident then cross-moved for summary judgment, contending that Dr. Harris is unable to prove her claim of disability due to a latex allergy by objective medical evidence. As a result, Provident asserts, she now belatedly claims that she is disabled due to asthma, which renders her notice of claim invalid. In addition, her claim of disability due to asthma is not supported by objective evidence, but rather, is solely based on her subjective complaints.

## IV. *DISCUSSION*

### A. *Summary Judgment Standard*

Summary judgment must be granted when the pleadings, depositions, answers to interrogatories, admissions, and affidavits show that there is no genuine issue as to any material fact, and that the moving party is entitled to summary judgment as a matter of law. Fed.R.Civ.P. 56; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Lang v. Retirement Living Pub. Co.*, 949 F.2d 576, 580 (2d Cir.1991). The moving party carries the initial burden of demonstrating an absence of a genuine issue of material fact. Fed.R.Civ.P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Thompson v. Gjivoje*, 896 F.2d 716, 720 (2d Cir.1990). Facts, inferences therefrom, and ambiguities must be viewed in a light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Project Release v. Prevost*, 722 F.2d 960, 968 (2d Cir.1983).

When the moving party has met the burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.*, 475 U.S. at 586, 106 S.Ct. 1348. At that point, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56: *Liberty Lobby Inc.*, 477 U.S. at 250, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. To withstand a summary judgment motion, evidence must exist upon which a reasonable jury could return a verdict for the nonmovant. *Liberty Lobby, Inc.*, 477 U.S. at 248–49, 106 S.Ct. 2505; *Matsushita Elec. Indus. Co.*, 475 U.S. at 587, 106 S.Ct. 1348. Thus, summary judgment is proper where there is "little or no evidence ... in support of the non-moving party's case." *Gallo v. Prudential Residential Servs.*, 22 F.3d 1219, 1223–24 (2d Cir.1994) (citations omitted).

### B. *Plaintiff's Breach of Contract Claim*

Under the terms of the disability insurance policy Dr. Harris purchased from Provident,

Total Disability or totally disabled means that due to Injuries or Sickness:

1. you are not able to perform the substantial and material duties of your occupation; and

2. you are receiving care by a Physician which is appropriate for the condition causing the disability....

[Y]our occupation means the occupation ... in which you are regularly engaged at the time you become disabled. If your occupation is limited to a recognized speciality within the scope of your degree or license, we will deem your speciality to be your occupation.

(Harris Aff. Ex. A.) There is no dispute in this case that plaintiff's occupation is the practice of anesthesiology, which is physically demanding and requires skill, concentration, and stamina, often for extensive periods of time. (*See* Leary Aff. ¶¶ 4–6.)

Despite the multitude and varied arguments raised by both sides, this case essentially boils down to two questions: 1) Whether the plaintiff gave adequate notice to the defendants that she suffers from asthma, and 2) Whether the plaintiff, in fact, suffers from asthma which prevents her from performing the substantial and material duties of her occupation as an anesthesiologist.

### 1. *Notice*

■ The defendants devote extensive time to arguing that Dr. Harris cannot prove that she is allergic to latex, and therefore, she now belatedly claims that she suffers from disabling asthma. However, plaintiff's claim of asthma is not belated at all. When Dr. Harris submitted her Notice of Claim on May 11, 1998, although listing the nature of her sickness as a "Latex Allergy", she also described her symptoms of "significant wheezing/coughing/shortness of breath/hives on entering hospital workplace." (Harris Aff. Ex. C.) Further, Dr. Slaughter's state-

ment, which Dr. Harris submitted with her Notice of Claim, described her diagnosis as "Latex induced asthma" and noted "Latex asthma" onset date of March 16, 1998. *Id.* In addition, in a letter to a Provident claims consultant on November 2, 1998, Dr. Harris stated, "As you know, I developed severe allergic asthma while at work on March 16, 1998 during the reconstruction of the labor and delivery unit at Glens Falls Hospital for the purpose of Latex abatement. Before that time, I had no asthma or pulmonary problems ...." *Id.* Ex. L. Plaintiff's attorney wrote to a Provident claims representative on February 22, 1999, stating that "Dr. Harris is unable to practice her profession as an anesthesiologist due to severe asthma." *Id.* Ex. N.

In light of the several references mentioned above, Provident was adequately placed on notice that the condition which was allegedly causing the plaintiff's disability was severe asthma. Accordingly, the defendants claim that plaintiff's belated assertion that she has disabling asthma renders her notice of claim invalid is rejected.

### 2. *Disability*

■ Having concluded that Provident was on notice of plaintiff's asthmatic condition, the next issue which must be determined is whether the plaintiff's asthma causes her to be totally disabled within the meaning of the disability insurance policy. First, it warrants noting that Provident's attempts to pin the plaintiff down to a specific cause for her condition, i.e. a latex allergy, misses the point. Contrary to the arguments raised, the plaintiff does not have to prove that she is allergic to latex or that her disabling condition, whatever its cause, occurred while she was working. Rather, the plaintiff need only show that she has a condition which renders her totally disabled from performing the essential duties of her occupation, no matter the cause of that condition and no matter

when or where such disabling condition arose. In other words, if the plaintiff is disabled, it is not because she is or is not allergic to latex. It is because she suffers from severe asthma. Until recently, both sides seem to have "missed the mark" on this core issue.

■ The plaintiff has presented several affidavits from her treating physicians in support of her claim. Dr. Slaughter submitted two affidavits, both of which express his opinion that Dr. Harris is totally disabled from performing the substantial and material duties of her profession of anesthesiology. (See Slaughter Aff. ¶ 2, Slaughter Supplemental Aff. ¶ 3.) Dr. Slaughter is plaintiff's treating allergist and has examined her on a regular basis. He found that during the months of March, April, and early May of 1998, when Dr. Harris attempted to continue working, she "suffered from an acute exacerbation of asthma, which in her case involved inflamed airways, cough, wheezing, and chest tightness (shortness of breath)." (Slaughter Aff. ¶ 5.) In order to alleviate the difficulty Dr. Harris had breathing, she required high doses of steroids. *Id.* Dr. Slaughter further found that "[w]hatever the trigger was, Dr. Harris developed hyperactive airways when exposed to it at work, and even aggressive treatment with corticosteroid medications could not stabilize her asthma while [she] continued to pursue her profession." *Id.* ¶ 7. Dr. Slaughter also noted that the plaintiff experienced other acute episodes of asthma when she was exposed to latex balloons on two separate occasions.

Dr. Desmond DelGiaccio is plaintiff's treating pulmonologist, who also opines

that she cannot perform the material tasks as an anesthesiologist. (DelGiaccio Aff. ¶ 9.) He stated in his affidavit that during the period that he has treated the plaintiff, "she has had asthma, a condition which, in her case, involves acute and chronic inflammation of the airways, with cough and dyspnea (shortness of breath)." *Id.* ¶ 4. Dr. DelGiaccio's diagnosis of asthma is based on Dr. Harris reported medical history as well as his repeated physical examinations. Dr. DelGiaccio's contemporaneous treatment notes during the period of July 1998 through June 2000 regularly point out plaintiff's persistent cough, (DelGiaccio Supplemental Aff. Ex. B at 6, 11, 15, 17, 19, 26), prolonged expiratory phase, *id.* at 6, 9, 11, 15, 17, 26, 30, 32, 37, and expiratory wheezes. *Id.* at 9, 11, 26, 30, 32, 37. While under his care, Dr. Harris has required "daily aggressive anti-inflammatory therapy at all times to maintain her ability to tolerably breathe." (DelGiaccio Aff. ¶ 5.) Finally, Dr. DelGiaccio noted that prolonged use of oral and inhaled steroids at the high doses which Dr. Harris requires can cause side effects such as emotional swings, inability to concentrate and fatigue. *Id.* ¶ 9.

The defendants sole support for denying Dr. Harris' claim for benefits is the opinion of Dr. DeMasi.[3] However, Dr. DeMasi was admittedly retained solely for the purpose of ruling out latex allergy. (DeMasi Dep. at 28.) In addition, he admittedly never formed any opinion concerning the plaintiff's ability to work aside from the issue of whether she has a latex allergy. *Id.* at 32. Finally, nowhere in Dr. DeMasi's affidavit or deposition does he rule out that the plaintiff has asthma,[4] much less render an opinion as to the severity of it.

---

3. The plaintiff asserts that Dr. DeMasi's opinion regarding her asthma should not be considered because it was not disclosed pursuant to Fed.R.Civ.P. 26(a)(2)(B) and L.R. 26.3. However, even if that is the case, his opinion

will nevertheless be considered for the limited purpose of deciding the present motions.

4. In fact, Dr. DeMasi admitted that the plaintiff "may have some asthma." (DeMasi Dep. at 30.)

Consequently, the defendants have failed to present adequate evidence to create a question of fact concerning whether the plaintiff's asthma renders her totally disabled from her occupation as an anesthesiologist.

### C. *Defendants' Counterclaims for Recission and Fraud*

█ The defendants' argument for recission centers on their assertion that the plaintiff misrepresented that she is unable to work because of a latex allergy. However, as previously discussed, although plaintiff's Notice of Claim alleges that she has a latex allergy, Provident had adequate notice of her asthmatic condition. The insurance policy in question does not require that the plaintiff prove the cause of her condition, but rather, that she has the condition (severe asthma) and it prevents her from performing the substantial and material duties of her occupation. While the plaintiff may have mistakenly believed that the cause of her asthma disability is a latex allergy, the defendants fail to show that the plaintiff misrepresented any material facts relative to her claim that she is, in fact, totally disabled from performing the substantial and material duties of an anesthesiologist.

█ Defendants additional argument that the plaintiff actively withheld material information by failing to immediately disclose the reports from Johns Hopkins and the Mayo Clinic is unpersuasive. First, those reports dealt solely with testing concerning plaintiff's possible allergy to latex, which, as discussed above, is not the essential inquiry in this case. Second, plaintiff notified Provident of her intention to consult specialists at Johns Hopkins and the Mayo Clinic. Provident never made an effort to request any further information or the final reports. Third, Dr. Harris was not examined at the Mayo Clinic until after Provident had already denied her claim, and neither she nor her doctors received the written reports from Johns Hopkins or the Mayo Clinic until after Provident had denied her claim. At best, the only information that Dr. Harris withheld at the time of Provident's denial of her claim was the verbal representation from the doctor at Johns Hopkins that her latex allergy skin test was negative. Thus, the defendants have failed to show that the plaintiff actively concealed information which was material to their decision to deny her claim for disability benefits.

Dr. Harris did make every effort to conceal the oral and written reports of Johns Hopkins and the Mayo Clinic from Provident. However, again, this was not material information because it only dealt with eliminating a possible cause of the plaintiff's asthma. The defendants were already in possession of Dr. DeMasi's report that she was not allergic to latex. The Johns Hopkins and Mayo Clinic reports would have only confirmed his conclusion. They would have done nothing to answer the basic question of whether or not the plaintiff was suffering from severe disabling asthma.

### D. *Plaintiff's Motion for Sanctions*

█ Dr. Harris was not candid and forthcoming when it came to disclosing the testing results from Johns Hopkins and the Mayo Clinic. Apparently, she believed that it was necessary for her to prove the *cause* of her condition in order to recover benefits. She and her treating physician, Dr. Slaughter, believed that the cause of her severe asthma was an allergic reaction to latex. When both Johns Hopkins and the Mayo Clinic failed to confirm a latex allergy, and the plaintiff, in fact, tested negative for that condition, she made every effort to hide these results from Provident. When Provident learned of the results, it asserted the counterclaims for recission based upon misrepresentation and fraud. The defen-

dants also apparently believed that proving the *cause* of the plaintiff's condition (severe asthma) was a material element of her claim. Otherwise, it would not have denied benefits on the sole ground that the plaintiff was not suffering from a latex allergy. Although mistaken, given Dr. Harris' behavior, Provident's counterclaims and motion were not unreasonable. Therefore, sanctions against the defendants are not warranted.

## V. CONCLUSION

The defendants had adequate notice of plaintiff's claim for benefits due to asthma, possibly caused by exposure to latex. The defendants denial of benefits because the cause of the plaintiff's asthma is not a latex allergy is unavailing. The plaintiff has sufficiently shown that she suffers from severe asthma and, whatever the cause, it renders her unable to perform the substantial and material duties of her occupation as an anesthesiologist. The defendants have failed to present any evidence to the contrary. She is entitled to the benefits due under her disability insurance policy with Provident.

Accordingly, it is

ORDERED, that

1. The motion and cross-motion by defendants Provident Life & Accident Insurance Company and Provident Companies, Inc. for summary judgment are DENIED;

2. Plaintiff Louise Harris' motion for partial summary judgment with respect to her breach of contract claim is GRANTED;

3. Plaintiff's breach of covenant of good faith and fair dealing claim is DISMISSED as moot;

4. Defendants counterclaims for rescission and fraud are DISMISSED;

5. Plaintiff's request for sanctions is DENIED; and

5. *See* N.Y. C.P.L.R. § 5004 (McKinney 1992)

6. a) Plaintiff is entitled to disability benefits in the sum of $10,560.00 per month commencing September 1998;

b) Defendants are directed to pay plaintiff the sum of $451,754.90 (see Exhibit "1") representing past due disability benefits from September 1998 to September 2001 with interest at 9% per annum; [5]

c) Defendants are directed to reimburse plaintiff the sum of any premiums paid from May 1998 with interest at 9% per annum; and

d) Defendants are directed to hereafter pay plaintiff the sum of $10,560.00 per month until she is no longer totally disabled under the terms of the disability insurance policy, or she attains the age of sixty-five years.

The Clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.